UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | No. 18-150 |
| JAMES JACKSON | SECTION I |

ORDER & REASONS

Before the Court is *pro se* defendant James Jackson's ("Jackson") motion[1] for compassionate release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A). The government opposes the motion.[2] Because Jackson has not established the existence of extraordinary and compelling reasons meriting relief, the Court concludes that compassionate release is not warranted.

I.

In 2018, Jackson pled guilty to counts four and eight of an eight-count indictment in a multi-defendant drug distribution conspiracy.[3] Count four charged him with distribution of cocaine base and heroin; count eight charged him with possession of a firearm in furtherance of a drug trafficking crime.[4] This Court sentenced Jackson to a term of imprisonment of 13 months as to count four and 60 months as to count eight, to be served consecutively for a total of 73 months, and to one three-year term of supervised release for each count, to be served concurrently.[5]

---

[1] R. Doc. No. 135.
[2] R. Doc. No. 139.
[3] R. Doc. No. 25 (indictment); R. Doc. No. 39 (rearraignment).
[4] R. Doc. No. 25, at 2–4.
[5] R. Doc. No. 102, at 1–4 (judgment).

Jackson is currently incarcerated at Pensacola FPC ("Pensacola"); his projected release date is July 22, 2023.[6]

Jackson asks the Court to grant him compassionate release due to the COVID-19 pandemic.[7] Jackson, at 37-years-old, offers no evidence of any particular medical condition that places him at increased risk of serious consequences should he contract COVID-19. He does claim, though, that he "has been kept in a 'lockdown' status" for much of the pandemic,[8] and that compassionate release has been granted to two other prisoners incarcerated at Pensacola.[9]

Jackson's request stems from his "strong fear associated with the COVID-19 threat, which could result in a fatal outcome."[10] He is scared that "should this occur, [his] children would be left fatherless."[11] He adds that it would be "more reasonable" to release him, so that he may "help[] his Aunt support his children."[12] He explains that his children "have been subjected to financial difficulties, due to a (1) adult income, in a difficult job market" and that "[t]his has placed inordinate stress on the children, their aunt" and himself.[13]

---

[6] *Inmate Locator*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited May 14, 2021).
[7] R. Doc. 135, at 5.
[8] *Id.* at 6.
[9] *Id.* at 2.
[10] *Id.* at 6.
[11] *Id.*
[12] *Id.* at 4.
[13] *Id.* at 6.

The government opposes Jackson's motion on the merits.  It concedes that Jackson has satisfied the relevant administrative exhaustion requirement[14] but argues that "he has not demonstrated 'extraordinary and compelling reasons' warranting release."[15]  Noting that a general fear of contracting COVID-19 and the repercussions of infection is not an extraordinary and compelling reason justifying release, the government argues that Jackson, who has made no allegations relating to any particular medical condition that places him at heightened risk should he contract COVID-19, has not carried his burden.[16]  The government also offers evidence that Jackson "was offered the COVID-19 Pfizer-BioNTech vaccine on February 24, 2021" but refused it.[17]

## II.

Generally, "[t]he court may not modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c).  That general rule has some exceptions, which, under the First Step Act, may now be presented to the court upon a defendant's motion.[18]  For such a motion to be properly before the court, the defendant must either exhaust all administrative remedies, or thirty days must elapse "from the receipt of [a

---

[14] R. Doc. No. 139, at 2.
[15] *Id.* at 8.
[16] *Id.* at 8–9.
[17] *Id.* at 8; *see* R. Doc. No. 139-1 (BOP record indicating Jackson refused a COVID-19 vaccination when offered).
[18] The First Step Act provided defendants a mechanism to unilaterally move for a sentence reduction; previously, the "Director of the Bureau of Prisons" needed to file the motion.  *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5193, 5239.

compassionate release request] by the warden of the defendant's facility, whichever is earlier." *Id.* § 3582(c)(1)(A).

The Court "may" grant such a motion if, "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent they are applicable," it finds that "extraordinary and compelling reasons warrant such a reduction." *Id.* The Court must also conclude, however, that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

The most relevant policy statement is found in § 1B1.13 of the U.S. Sentencing Guidelines Manual. The Application Notes to that policy statement, in turn, provide four categories of extraordinary and compelling reasons: "(1) medical conditions, (2) age, (3) family circumstances, and (4) 'other reasons.'" *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) (quoting U.S.S.G. § 1B1.13, Policy Statement, cmt. n.1(A)–(D)) (alterations omitted).

As noted above, the First Step Act provided a new avenue to request compassionate release. Previously, only the Director of the BOP—not defendants on their own—could move for compassionate release. The First Step Act changed that. However, the Sentencing Commission's policy statements have lagged behind. Because these policy statements have not been amended since the enactment of the First Step Act, portions of them contradict 18 U.S.C. § 3582(c)(1)(A). For example, the policy statement referenced above begins with, "[u]pon a motion by the Director of the Bureau of Prisons"—which implies that the entire statement applies only to such motions (and not those filed by defendants). U.S.S.G. § 1B1.13, Policy

4

Statement; *see also id.* cmt. n.4 ("A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons[.]"); *see also United States v. Perdigao,* No. 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020) (Fallon, J.) (noting the discrepancy).

The Fifth Circuit recently clarified that "neither the policy statement nor the commentary to it binds a district court addressing a prisoner's own motion under § 3582." *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021). Nonetheless, the Fifth Circuit has also recognized that the policy statement may still "inform[] [its] analysis." *Thompson*, 984 F.3d at 433.

### A. Exhaustion of Administrative Remedies

Section 3582, as mentioned above, allows a court to consider a defendant's compassionate-release motion only after the defendant exhausts administrative remedies, or 30 days elapse after the defendant submits a compassionate-release request to the warden. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) (holding that the statutory requirement is "*not* jurisdictional but . . . *is* mandatory") (emphasis in original). It is undisputed that Jackson properly exhausted his request.[19] Accordingly, the Court may consider his motion. *See* 18 U.S.C. § 3582(c)(1)(A).

### B. Extraordinary and Compelling Reasons

A prerequisite to granting compassionate release is that the defendant shows an extraordinary and compelling reason justifying release. *Shkambi*

---

[19] R. Doc. No. 139, at 2.

notwithstanding, the Sentencing Commission's policy statement may still "inform" this Court's analysis of whether Jackson has presented an extraordinary and compelling reason. *Thompson*, 984 F.3d at 433 (citing U.S.S.G. § 1B1.13, Policy Statement, cmt. n.1); *United States v. Helmstetter*, No. 92-469, 2021 WL 310355, at *5 (E.D. La. Jan. 29, 2021) (Africk, J.); *Perdigao*, 2020 WL 1672322 at *2.

Jackson's request is rooted in a combination of two factors countenanced by the policy statement, a medical condition (the potential for infection with COVID-19) and family circumstances (his desire to provide for his family). As discussed, Jackson offers no evidence of any particular condition placing him at a heightened risk should he contract COVID-19. And it is well established that "[a] generalized fear of the virus, by itself, does not justify release." *United States v. Curry*, No. 10-111, 2020 WL 4201646, at *2 (E.D. La. July 22, 2020) (Vance, J.) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)). Jackson, therefore, has not demonstrated extraordinary and compelling reasons based on his risk of contracting COVID-19.

As noted, Jackson's motion is fairly construed as arguing that the impact of his absence on his children is an "extraordinary and compelling reason" justifying release. The government disagrees, arguing that "[e]very inmate in the BOP can make these same general allegations."[20] And, referencing Jackson's refusal to be vaccinated, the government concludes that Jackson's "actions speak louder that [sic] any words he could put in his motion."[21]

---

[20] *Id.* at 9. Though this is only partially true—childless inmates could not make the argument—the Court takes the government's point.
[21] *Id.*

"Family circumstances can only justify compassionate release in extreme situations[.]" *United States v. Bowyer*, No. 16-96, 2020 WL 5942195, at *2 (E.D. La. Oct. 7, 2020) (Barbier, J.) (gathering cases). Specifically, the commentary to the relevant policy statement explains that "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" constitutes an "extraordinary and compelling reason" meriting release, provided a defendant meets the other relevant requirements. U.S.S.G. § 1B1.13, Policy Statement, cmt. n.1(C).

Assuming Jackson's description of his aunt's financial situation is accurate, the Court cannot conclude that the circumstances constitute extraordinary and compelling reasons. Jackson does not argue that his aunt is incapacitated, only that "the economy" is placing strain on her financial situation.[22] That is not enough. *See* U.S.S.G. § 1B1.13, Policy Statement, cmt. n.1(C); *Bowyer*, 2020 WL 5942195, at *2; *see also United States v. Ellis*, No. 15-124, 2020 WL 5073562, at *3 (E.D. La. Aug. 26, 2020) (Morgan, J.) (denying compassionate release for family circumstances where the caregiver of the defendant's minor child suffered from various serious medical conditions but was not incapacitated).

## III.

Simply put, Jackson has not come close to establishing the existence of extraordinary and compelling reasons justifying release, which means that the Court cannot grant the requested relief. For that reason, the Court need not evaluate whether the § 3553(a) factors merit relief. Accordingly,

---

[22] R. Doc. No. 135, at 6.

**IT IS ORDERED** that Jackson's motion for compassionate release is **DENIED**.

New Orleans, Louisiana, June 3, 2021.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**